Lionel GOODMAN, Daniel Klein, Bernard Kleppel, Fred Donnenberg, Barry L. Kroll, Harry Kroll, Thelma Cohen, Jack Solinger and David G. Hirsch, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

H. HENTZ & CO., a partnership, Robert Pollack, William Silverstein, Richard F. Uhlmann, Frederich Uhlmann, John Benjamin and Richard Rubloff, Defendants.

No. 65 C 2079.

United States District Court
N. D. Illinois, E. D.
March 13, 1967.

Robert J. Downing, William M. Ward, Manuel E. Cowen, Chicago, Ill., for plaintiffs.

Harold W. Keele, Halbert O. Crews, William R. Fishman, Chicago, Ill., for defendants.

## OPINION AND ORDER

NAPOLI, District Judge.

## I

## FACTS

■ For purposes of deciding the motion of defendants to dismiss for failure to state a claim upon which relief can be granted, the allegations of the complaint must be accepted as fact. Plaintiffs allege that they were customers of defendant Hentz & Co., a partnership, which is a registered broker-dealer and commission merchant with the Securities and Exchange Commission and the Commodity Exchange Authority, and a member firm of the principal securities exchanges and commodity contract markets. Also named as defendants are five resident partners of Hentz & Co., and Richard Rubloff, a registered representative and agent of Hentz & Co., referred to as a "customers man." Plaintiffs allege that they bought and sold securities and commodities through Hentz, dealing with its representative and agent Rubloff. The jurisdictional allegations that the transactions occurred in this district, and that the United States mails and other instruments of transportation and communication in interstate commerce were used, also appear. Plaintiffs then allege that while acting as defendants' agent and registered representative, Rubloff engaged in a scheme and artifice by which he defrauded Hentz's customers (including plaintiffs) in the purchase and sale of securities and commodities in certain enumerated ways, made certain enumerated false and fraudulent statements to plaintiffs and omitted to state material facts to plaintiffs in the course of the fraud. The alleged transactions occurred during a period from October, 1962 to January, 1965.

Plaintiffs bring this action as a class action on behalf of all defrauded customers of Hentz & Co., seeking recovery of actual and punitive damages. It should be noted that a clerk's default has been entered against the defendant Rubloff on July 7, 1966 for failure to plead or otherwise defend the action. A motion to vacate the default was denied on September 29, 1966.

The other defendants, Hentz & Co., and its resident partners, move this court to strike certain allegations of the complaint for failure to state a cause of action, to dismiss the complaint as a class action, or in the alternative to sever plaintiffs' claims. Also pending is a motion by plaintiffs for an order upon defendants to answer an initial set of discovery interrogatories.

## II

## FORM OF ACTION

■ The Court will rule against maintenance of this action as a class action under Rule 23 of the Federal Rules. First of all, there has been no satisfactory showing that the class is so numerous that joinder of all members is impracticable. Secondly, and more important, this court has no jurisdiction over some members of the class. Where jurisdiction is based upon a federal question, as in the case at bar, and a party who presents no substantial federal question joins the other plaintiffs, the court must dismiss the party presenting no substantial federal question. Pearce v. Pennsylvania Railroad Co., 3 Cir., 162 F.2d 524 (1947). Plaintiff Solinger in the case at bar is clearly a member of the proposed class, yet this Court has no jurisdiction over his claim because he presents no substantial federal question, his transactions with Hentz & Co., being only in non-regulated copper futures contracts. Copper is not a "commodity"

as that term is defined in the Commodity Exchange Act, 7 U.S.C. § 2. Thus this plaintiff has alleged no facts which could bring the matters complained of within the scope of the act, even if it be assumed that a civil remedy is available in the federal courts under the Commodity Exchange Act. Weinfeld v. Paine, Webber, Jackson and Curtis, D.C., 191 F.Supp. 750 (1961). The class may contain others like Solinger, but even if he is the only member over whom this Court lacks jurisdiction, a class action would not be proper. Any judgment for or against the class would not be binding upon him, since this Court has no jurisdiction over him. Solinger and others like him would be entitled to their day in the state courts. Thus a class action here will not prevent multiple litigation, nor will it remove the risk of inconsistent or varying adjudication with respect to individual members of the class. Only the state courts have jurisdiction broad enough to define in a single class action the rights and liabilities arising from litigous situation created by the misrepresentations made by Rubloff while in the course of his employment with Hentz & Co.

Although limited by the boundaries of federal jurisdiction, the Federal Rules of Civil Procedure are flexible enough to allow plaintiffs other than Solinger substantial procedural advantages, in the interests of judicial economy, similar to the class action device. As an alternative to the class action, plaintiffs request leave for permissive joinder under Rule 20.

■■ The complaint alleges that defendant Rubloff, while in the employment of the other defendants, pursued a consistent course of fraudulent misrepresentations to the plaintiffs concerning their securities and commodities transactions. As the record stands, with all allegations of the complaint deemed admitted, it is not clear that the issues to be tried are so unrelated that severance should be granted on the ground that plaintiffs' right to relief did not arise out of the same transaction, occurrence,

or series of transactions or occurrences, as required by Rule 20, Permissive Joinder of Parties. This rule should be given the liberal interpretation needed to implement its apparent purpose: the avoidance of multiple trials involving many similar or identical issues. Consistent failure of the other defendants to maintain adequate standards of supervision over Rubloff, if proved by plaintiffs, would be a continuing act of negligence by defendants, causing the injury to plaintiffs, for which defendants would be liable to plaintiffs.

■ The allegations of the complaint spell out a course of conduct by the partner defendants which falls within the requirement of Rule 20, Permissive Joinder, allowing joinder of actions based upon the same "series of transactions or occurrences." The purpose of this rule was not to lay a subtle snare for the unwary pleader, but rather to avoid multiple lawsuits involving similar or identical issues, except where a showing of oppression, prejudice or delay is made. No such showing is made by the partner defendants in their brief supporting the motion to sever. After discovery and pre-trial, if a single trial appears prejudicial to the defendants, for example because a jury may be inclined to find in favor of all plaintiffs on the liability issue because of the stronger case made by only some of the plaintiffs, the court will in its discretion under Rule 20(b) and 21 order separate trials. But the court will not order a severance before the parties are at issue, absent a showing of prejudice, merely on the theory that rule 20 sets out technical requirements as a condition precedent to allowing joinder of parties.

### III

### THE SECURITIES ACT CLAIMS

■ Defendants move to dismiss some or all of the claims involving alleged securities transactions, on the ground that the transactions as alleged do not indicate a consummated purchase or sale. Thus, in some cases Rubloff

would represent to plaintiffs that purchases and sales of securities were being made, when in fact they were never made; in other cases Rubloff would "sell" to plaintiffs securities which were in fact non-existent. Defendants contend that the provisions of the Securities Exchange Act as amended, 15 U.S.C.A. § 78j [1] and the Securities Exchange Commission Rule 10b–5 promulgated thereunder (17 C.F.R. § 240.10b–5),[2] apply only when fraud is involved in a completed purchase or sale of securities.

Defendants' reading of the Statute and Regulations thereunder is untenable. If their position were sustained, the law would be that if a customers man at a brokerage house overstated the virtues of a certain stock, inducing his client to purchase the stock for a price 20% above its value, then he and the controlling partners would be liable to the customer under the Securities Act; but if the customers man took client's money for purchase of stock and returned nothing to the client, then this fraud is beyond the reach of the Securities Act. This interpretation of the Securities laws flies in the face of the plain language of Section 10(b), which proscribes fraud "in connection with the purchase or sale" of securities. The court finds no justification in the legislative history of the Act or in the cases for reading this phrase as if it read merely "in the purchase or sale" rather than "in connection with the purchase or sale."

Various cases cited by defendant, in which relief has been denied to parties complaining under Section 10(b), are not in point. In Keers and Company v. American Steel and Pump Corporation, D.C., 234 F.Supp. 201 (1964), Complainants were victims of the breach by an executor of a decedent's promise to sell controlling shares in a corporation only after offering plaintiffs first refusal. The court found a breach of contract, but no fraud whatsoever, in denying plaintiffs recovery under the Securities Act. The case is not in point. Nor is Birnbaum v. Newport Steel Corp., 2 Cir., 193 F.2d 461 (1951). In that case the complainants were shareholders in a corporation, who were injured when a corporate insider, in violation of fiduciary duty as director of the corporation, sold his own holdings in the corporation at twice the market value, without informing the plaintiff shareholders of the opportunity for favorable sale. These two cases are not enbarrassing to plaintiffs. At most they support the proposition that a person not a party to a purchase or sale cannot bring a 10(b) (5) action for fraud in connection with that purchase or sale. In the case at bar, plaintiffs were actual parties to transactions which, for the fraud of Rubloff, would have been actual purchases or sales of securities by the plaintiffs. Rubloff's fraud was directly connected with these purchases and sales. The fact that the fraud was so substantial that entire transactions intended by plaintiffs to be

1. This section provides: § 78j. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange— * * * (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

2. Rule 10b–5 provides: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails. or of any facility of any national securities exchange, (1) to employ any device, scheme, or artifice to defraud, (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

purchases and sales for their accounts, amounted to complete conversions of their funds by Rubloff, does not deprive plaintiffs of their right to recover under the Securities Act, a right they clearly would have if Rubloff had perpetrated lesser frauds, such as misrepresentations concerning quality of stocks he recommended to them, Smith v. Bear, 2 Cir., 237 F.2d 79, 60 A.L.R.2d 1119 (1956); or excessive churning of an account to create commissions, Lorenz v. Watson, D.C., 258 F.Supp. 724 (1965). If there is any difference between the fraud in these cases and the fraud in the case at bar, it is only that the latter is more odious, because the customer loses his entire investment.

Plaintiff's alternate theory of their action is that this is a suit brought for violation by the partner defendants of a duty imposed by 15 U.S.C. § 78o(b) (5) (E), which empowers the Securities and Exchange Commission to suspend or revoke the registration of a broker or dealer if such broker or dealer or if any person associated with such broker or dealer

"has failed reasonably to supervise, with a view to preventing violations of (the Securities Act of 1933, the Securities Exchange Act of 1934) or of any rule or regulation under any of such statutes or has failed reasonably to supervise, with a view to preventing violations of such statutes, rules, and regulations, another person who commits such a violation, if such other person is subject to his supervision. For purposes of this clause (E) no person shall be deemed to have failed reasonably to supervise any person, if—

(I) there have been established procedures, and a system for applying such procedures, which would reasonably be expected to prevent and detect, insofar as practicable, any such violation by such other person * * *"

Accordingly, plaintiffs contend this court has jurisdiction of this action under 15 U.S.C. § 78aa of the Securities Exchange Act, which provides:

The district courts of the United States * * * shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

The court finds that the allegations of the complaint are sufficient to allege a violation by the partner defendants of their duty to supervise the defendant Rubloff, in particular with a view to preventing violations of section 78j of the Securities Exchange Act, and the Commission regulations thereunder. A customer of a brokerage house injured by the failure of the partners to supervise their customers man may bring a civil action in the Federal Courts against the partners, who are primarily liable. Lorenz v. Watson, D.C., 258 F.Supp. 724 (1965). Such continuous failure to supervise may also be construed as the common question of law or fact necessary to joinder of the claims here.

The court further finds that the allegations of the complaint set forth, as to each plaintiff seeking damages for violations of the Securities Act by Rubloff, a single fraudulent scheme. Plaintiffs Goodman, Cohen, Donnenberg and Harry Kroll engaged in certain Stock transactions with defendants which are clearly within the protection of the Securities Act, as well as certain other transactions in unregulated commodities, which transactions, if standing alone, would be no basis for federal jurisdiction. In cases where a single fraudulent scheme involves both Securities and non-securities, a plaintiff may recover for both the Securities and non-securities in his action in the federal court. Errion v. Connell, 9 Cir., 236 F.2d 447 (1956).

In Errion v. Connell, plaintiff was tricked into selling stock and other property in exchange for certain oyster lands which later proved to be substantially

worthless. Defendants contended that because both securities and non-securities were involved, plaintiff should have brought a common-law action in the state courts to recover, and that the District Court did not have jurisdiction to award damages for other than the securities. The court held:

> We are of the opinion that the Act of 1934 was designed to cut out "sharp practices" and fraudulent schemes involving securities, and the fact that there may be a co-mingling of securities with nonsecurities in the scheme does not oust the United States District Court of jurisdiction. * * * It is alleged in the complaint in our case, and the trial court found, a single cause of action involving a single fraudulent scheme to defraud Mrs. Connell of her property. There were involved two types of property, one being securities over which the federal court had jurisdiction, and the other non-securities over which the federal court normally has no jurisdiction. But the single fraudulent scheme arising out of the same set of facts encompassed both types of property. The thought of requiring two law suits in this situation is untenable. We therefore hold that the trial court correctly awarded damages for the entire fraudulent scheme, even though non-securities were involved. 236 F.2d at 454.

Therefore plaintiffs Goodman, Donnenberg, Cohen and Harry Kroll may recover their entire damages resulting from the scheme of Rubloff as to each of them, regardless of whether or not federal jurisdiction exists to award civil damages to persons engaging only in commodity transactions.

## IV

### THE COMMODITY ACT CLAIMS

Plaintiffs Klein and Barry Kroll allege only commodity transactions between themselves and defendants. If there is federal jurisdiction at all as to these plaintiffs, it must be based upon alleged violations of the Commodity Exchange Act of 1936, 7 U.S.C. § 1 ff. They present to this court the novel question, whether a civil remedy cognizable in the federal courts is to be implied under the Commodity Exchange Act. No civil remedy is expressly granted to defrauded investors in commodities under this act. No case directly in point has been cited. Weinfeld v. Paine, Webber, Jackson and Curtis, supra did not reach the issue on its merits, the court having found that federal jurisdiction was lacking because the plaintiff there did not allege transactions in commodities within the coverage of the act. In Rosee v. Board of Trade of the City of Chicago, 7 Cir., 311 F.2d 524 (1963), the Court of Appeals in this Circuit found that the trial court had correctly dismissed an action by a member of the board of trade based upon his suspension. Although a civil remedy was denied in this case, the plaintiff was not a defrauded investor, as in the case at bar, but rather a member of a board of trade disputing his suspension. The court was aware of this distinction in denying a civil remedy to the plaintiff there. It left open the question of whether a defrauded investor has a civil remedy under the Commodity Exchange Act. Distinguishing several cases cited to it in which civil remedies had been implied from federal regulatory statutes, the court concluded:

> In each of these cases, the issue involved enforcement of federally created rights and duties directly related to the purposes of the legislation. Judicial enforcement, although not expressly provided for, was deemed to be necessary for the implementation of the legislative intent in enactment of the statute. In the instant case, it does not appear that Congress contemplated the judicial remedies of injunction and accounting by means of review of arbitration and disciplinary proceedings involving fellow members before the Board as a means of implementing the legislative purpose of the Commodity Exchange Act in pro-

scribing misleading and fraudulent trade transactions. 311 F.2d at 528.

Plaintiffs Kroll and Klein allege that they were defrauded while investing in regulated commodity contracts. Thus they fall directly within the class of persons Congress sought to protect by enacting Section 6b of the Commodities Exchange Act. This section makes it "unlawful" for an employee of a member of a contract commodity market to cheat or defraud or attempt to cheat or defraud an investor dealing in commodity contracts or commodity futures contracts, in interstate commerce. Section 4 of the Commodity Exchange Act imputes the act of an agent acting for a partnership to the partners themselves.

■■■ Violation of a legislative enactment by doing a prohibited act makes the actor liable for an invasion of the interest of another if: (1) the intent of the enactment is exclusively or in part to protect the interest of the other as an individual; and (2) the interest invaded is one which the enactment is intended to protect. Restatement, Torts, Section 286. Violation of the standard of conduct set out in Section 6b of the Commodity Exchange Act is a tort for which plaintiffs, as members of the class Congress sought to protect from the type of harm they allege here, have a federal civil remedy even in the absence of specific mention of a civil remedy in the Commodity Exchange Act. The Restatement rationale was the basis for the presently well accepted rule that a civil remedy cognizable in the federal courts will be implied for a defrauded investor under Section 78j of the Securities Act of 1934 and Securities and Exchange Commission regulation 10b–5 thereunder. Kardon v. National Gypsum Co., D.C., 69 F.Supp. 512 (1946).

■■■ Both parties have exhaustively briefed the similarities and differences between the Securities Exchange Act of 1934 and Commodity Exchange Act. Defendant, pointing out that the *Kardon* line of cases relies at least in part on other sections of the Securities Exchange Act which allow private civil actions, contends that the complete absence of provision for private civil actions in the Commodity Exchange Act must be decisive here. However,

> "Implied rights of action are not contingent upon statutory language which affirmatively indicates that they are intended. On the contrary, they are implied unless the legislation evidences a contrary intention. Brown v. Bullock, D.C., 194 F.Supp. 207, 224, aff'd on other grounds, 2 Cir., 294 F.2d 415; cited in Wheeldin v. Wheeler, 373 U.S. 647 at 661, 662, 83 S.Ct. 1441, 10 L.Ed.2d 605 (Brennan, J., dissenting)."

There is no indication in the Commodity Exchange Act that Congress intended not to allow private persons injured by violations access to the federal courts.

This court therefore holds that plaintiffs Kroll and Klein have stated a cause of action arising under the Commodity Exchange Act.

### ORDER

In accordance with the foregoing, it is hereby ordered:

1. That this action may not be maintained as a class action.

2. That joinder of plaintiffs' claims here is proper.

3. That plaintiff Solinger be dismissed for want of federal jurisdiction. That motions of all other defendants to strike portions of the complaint for failure to state a cause of action are denied.

4. That defendants answer or otherwise respond to plaintiffs' complaint within twenty days.

5. That defendants respond to plaintiffs' interrogatories within thirty days.